**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

———————————————————————

PUBLIC HEALTH AND MEDICAL )
PROFESSIONALS FOR )
TRANSPARENCY, )
)
           Plaintiff, )
)
        v. )     Civil Action No. 4:21-cv-01058-P
)
UNITED STATES FOOD AND DRUG )
ADMINISTRATION, )
)
          Defendant. )
———————————————————————)

**DEFENDANT'S REPLY BRIEF IN ADVANCE OF SCHEDULING CONFERENCE**

**INTRODUCTION**

This is a Freedom of Information Act ("FOIA") case; it is not a challenge to the decision of the U.S. Food and Drug Administration ("FDA") to approve Pfizer's COVID-19 vaccine, and it is not about either the legality or the wisdom of vaccination mandates. Nor is this case about the Federal Government's grant of legal immunity to Pfizer and other producers of related vaccines.[1] Indeed, none of these topics—to which Plaintiff Public Health and Medical Professionals for Transparency ("PHMPT") devotes much if not most of its "Brief in Support of

---

[1] Although wholly legally irrelevant to the issue before the Court, Plaintiff's repeated insinuations that there is anything remarkable or unusual about the legal immunity afforded to Pfizer and other manufacturers of similar COVID-19 vaccines is false. *See, e.g.*, https://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters (homepage of the Office of Special Masters, U.S. Court of Federal Claims, which administers the National Vaccine Injury Compensation Program ("Vaccine Program")).

Timely Production" (Plaintiff's "First Brief," or "Pl. Br."), Dkt. No. 26[2]—has any real legal relevance to the straightforward issue before the court: *i.e.*, what rate is reasonable and feasible for the processing of records responsive to Plaintiff's FOIA request, taking into account, *inter alia*, the breadth of the request, FDA's mushrooming FOIA docket, applicable resource constraints, and fairness to other FOIA requesters.

Nor is the issue of expedition really at issue. As explained herein, FDA correctly determined that—particularly in light of the copious information that FDA and other federal agencies have already made public regarding the Pfizer vaccine—Plaintiff is not entitled to expedition under the applicable standards established by FOIA and agency regulations. However, and in any event, FDA has started processing Plaintiff's request—and, thus, Plaintiff has already received all the relief that expedition affords, rendering this issue moot. Moreover, even where formal expedition is granted, FOIA does not mandate any particular processing schedule, but rather only that the agency process responsive records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). Thus, even in expedited cases, the bottom-line issue still remains what processing schedule is "practicable" for the agency.

The processing schedule demanded by Plaintiff—that FDA process approximately 329,000 record in a matter of mere *months*—not only fails to meet that standard by any arguable stretch of the imagination, but is simply not possible for FDA to meet. Conversely, FDA is making every effort to process Plaintiff's request as quickly as "practicable"—an effort that is reflected by both the some 3,000-plus pages that Plaintiff will have received prior to the Court's scheduling conference, as well as the 12,000-plus pages that FDA proposes to produce by the

---

[2] Defendant's reply responds to Plaintiffs "corrected" brief, filed December 7, 2021. *See* Dkt. No. 26.

end of January 2022. While FDA cannot at this juncture commit to a processing schedule in excess of 500 pages per month beyond that point, FDA's proposal reflects a floor, not a ceiling; if FDA is thereafter able to process records at a faster pace, its proposal commits it to do so.

Accordingly, to the extent that the Court declines to adopt FDA's proposal in full, the agency respectfully requests that the Court partially adopt its proposal now—*i.e.*, approve FDA's proposal for the production of more than 12,000 pages by January 31, 2022—and then revisit the issue of a longer-term processing and production schedule with both parties in February 2022. That approach would afford Plaintiff time to assess how it might productively narrow its request; afford FDA more time to assess whether faster processing may be possible for at least certain subsets of the responsive records; and also afford both parties more time to use their best efforts to negotiate a mutually agreeable processing schedule. In the meantime, the partial adoption of FDA's proposal will ensure that the agency maintains a full-court press ahead, while adequately protecting numerous important public interests.

## <u>DEFENDANT'S INTERIM DECEMBER 13, 2021 PRODUCTION</u>

Before turning to the substance of the issues currently presented by this matter, Defendant briefly confirms that on December 13, 2021—*i.e.*, the same day this filing is being made—it will make the production specified by its proposed processing schedule. *See* Defendant's Brief in Advance of Scheduling Conference ("Def. Br."), Dkt. No. 22, at 7-8. That is, before the end of the day today, Defendant will make the production described below, consisting of approximately 2,900 additional pages, as well as 9 additional files:

- Plaintiff's priority item #1 – CRF files for site 1055 (approximately 2,030 pages);
- Completion of Plaintiff's priority item #5 –
  - Four additional .txt files that were listed on pages 10 and 11 of the Index;

3

- Five additional SAS files (not specifically listed on Plaintiff's priority list, but Plaintiff has expressed interest in these files during the course of negotiations).

- Publicly releasable information from the following additional sections of the original Comirnaty BLA:

  - Section 2.5 – Clinical Overview (approximately 333 pages)

  - Section 2.7.3 – Summary of Clinical Efficacy (approximately 182 pages)

  - Section 2.7.4 – Summary of Clinical Safety (approximately 344 pages)

Thus, by the time of the Court's scheduled status conference, FDA anticipates that it will have produced to Plaintiff more than 3,000 pages of responsive materials, most of which were listed on Plaintiff's Priority List. Moreover, FDA will have completed processing and production of four items on Plaintiff's Priority List (items 1, 5, 6, and 8).

## ARGUMENT

### I.   Plaintiff Has Not Demonstrated an Entitlement to Expedited Processing, and Expedition Is In Any Event Moot

Defendant's prior filings explain the relevant legal framework established by FOIA for the processing and production of federal records under that Act's auspices. *See* Def. Br. 1-2; Dkt. No. 20 at 1-3. Defendant respectfully refers the Court those earlier filings, and will not repeat that framework at length here. In short, when a plaintiff brings a FOIA lawsuit, it is common for the parties to confer and agree upon—or, where agreement is not possible, for the Court to adjudicate—a reasonable schedule by which the defendant agency will search for, and then process in comportment with FOIA's enumerated exemptions, records responsive to the plaintiff's FOIA request. This is the stage that the instant case has reached, and thus the issue now before the Court.

Although FOIA allows—in exceptional circumstances where requesters meet the stringent regulatory requirements—for an agency to prioritize certain requests for expedited

4

processing, Plaintiff did not justify such treatment before FDA, and has not properly presented such a claim before the Court. Indeed, Plaintiff's Complaint does not plead a claim for expedited processing, and thus this issue is not properly before the Court at all. *Cf. New York Times Co. v. Def. Health Agency*, No. 21-CV-566 (BAH), 2021 WL 1614817, at *4 (D.D.C. Apr. 25, 2021) (noting that the question of whether the plaintiff had "met the requirements for expedited processing," was "not properly before" the court, where the "plaintiff assert[ed] no claim challenging the agencies' explicit or constructive denial of expedited processing in the Complaint"). Moreover, as Defendant explains in detail below, judicial review of an agency's denial of an expedition request is on "the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), much like a claim brought under the Administrative Procedures Act ("APA"). Thus, to the extent, *arguendo*, that the Court were to excuse Plaintiff's non-compliance with Federal Rule of Civil Procedure 8 and take up the merits of an unpled expedition "claim" at the forthcoming scheduling conference, the Court is statutorily precluded from considering, *inter alia*, any of the declarations submitted by Plaintiffs—none of which was before FDA at the time of its administrative decision. In any event, FDA correctly assessed that Plaintiff's request does not satisfy the requisite standards for expedition, and its decision, to the extent it is reached, should be affirmed.

Finally, for all practical purposes, expedition is moot in any event.  Expedition only entitles the requester to move to the top of the processing queue, ahead of non-expedited requests and behind earlier granted expedited requests.  FDA has already started to process Plaintiff's request, however, which is the most relief Plaintiff can receive from a grant of expedition. Once expedited, the agency is required to process the request as soon as "practicable." What is practical here is the essential issue before the Court.

A.      **Applicable Legal Framework for Requests for Expedited Processing**

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests. *See* Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, § 8, 110 Stat. 3048 (codified at 5 U.S.C. § 552(a)(6)(E)) ("EFOIA"). Expedition, when granted, entitles requestors to move immediately to the front of an agency processing queue, ahead of requests filed previously by other persons not granted expedited processing themselves.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records. Specifically, Congress directed agencies to enact regulations providing for expedited processing (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(II).

FOIA further defines "compelling need" as either (1) "that a failure to obtain requested records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (2) "[w]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I)-(II). And, in carrying out FOIA's instruction to further implement these standards via regulation, FDA added the specification that, with respect to the second of these tests, the "urgency" must be "demonstrated." 21 C.F.R. § 20.44(a)(2). Specifically, in order to satisfy 21 C.F.R. § 20.44(a)(2), a FOIA requester must "demonstrate" that:

> (1) The requester is primarily engaged in disseminating information to the general
> public and not merely to a narrow interest group;

6

(2) There is an urgent need for the requested information and that it has a particular value that will be lost if not obtained and disseminated quickly . . .  and

(3) The request for records specifically concerns identifiable operations or activities of the Federal Government.

*Id.* § 20.44(c)(1)-(3).[3]

In enacting EFOIA, Congress specified that the expedited processing categories should be "narrowly applied." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795, at 26, 1996 U.S.C.C.A.N. 3448, 3469 (1996(). As the D.C. Circuit has explained,[4]

> Congress' rationale for a narrow application is clear: "Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment." . . . Indeed, an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none.

*Id.* at 307 n.7 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, at 26). Likewise, Department of Justice guidance advises agencies to "carefully" assess the merits of expedited processing requests "[b]ecause the granting of a request for expedition necessarily works to the direct disadvantage of other FOIA requesters."  U.S. Department of Justice, FOIA Update: OIP Guidance: When to Expedite FOIA Requests (Jan. 1, 1983),

https://www.justice.gov/oip/blog/foia-update-oip-guidance-when-expedite-foia-requests.

Further, while the burden is on the agency to sustain its action in cases involving the improper withholding of records under claimed FOIA exemptions, 5 U.S.C. § 552(a)(4)(B), the

---

[3] FDA's regulation does not provide for any other circumstances that qualify for expedition.

[4] Courts often rely on the case law concerning FOIA from the D.C. Circuit, as it is "the federal appellate court with the most experience in this field." *Cameron Corp. v. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002).

requestor has the burden to "demonstrate[] a compelling need" for expedited processing. 5

U.S.C. § 552(a)(6)(E)(i); *see also Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C.

2013) (explaining that "[t]he requestor bears the burden of proof" in expedited processing cases);

*Al-Fayed*, 254 F.3d at 305 n.4 (same) (citing 5 U.S.C. § 552(a)(6)(E)(i)(I) and H.R. Rep. No.

104-795, at 25).

Finally, expedition decisions are subject to judicial review in accordance with §

552(a)(6)(E)(iii),which states:

> Agency action to deny or affirm denial of a request for expedited
> processing pursuant to this subparagraph, and failure by an agency to
> respond in a timely manner to such a request shall be subject to judicial
> review under [5 U.S.C. § 552(a)(4)], ***except that the judicial review shall
> be based on the record before the agency at the time of the determination***.

5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); *see also, e.g., Am. Oversight v. U.S. Dep't of

Justice*, 292 F. Supp. 2d 501, 505-06 (D.D.C. 2018). Section 552(a)(4), the cross-referenced

provision, is the general FOIA provision authorizing judicial review of agency decisions to

withhold records from FOIA requestors. *See id.* § 552(a)(4)(B).  A decision denying expedited

processing for failure to establish "compelling need" under § 552(a)(6)(E)(i)(I) is reviewed *de

novo*. *See Al-Fayed*, 254 F.3d at 307-08.

    **B.**     **FDA Properly Denied Plaintiff's Request for Expedited Processing**

Applying the above-described standards, FDA properly denied Plaintiff's request for

expedited processing, and—to the extent the Court reaches the question—it should affirm the

agency's decision. In assessing this question, the Court is statutorily limited to "the record

before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii)—which, here,

excludes each of the supporting declarations submitted by Plaintiff, as well as all of the links and

exhibits cited in the Declaration of Aaron Siri, Esq., save for the materials cited in paragraphs 29,

30, 31, 32, 33, 38, and 40 of the declaration. *See, e.g.*, *See, e.g., Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 818 (S.D.N.Y. 2017) (declining to consider group's later-submitted declaration because it was not before the agency at time of decision).

After assessing Plaintiff's request for expedition, as well as the supporting media articles cited in its application, FDA determined that, while Plaintiff had demonstrated that it is "primarily engaged in disseminating information to the general public and not merely to a narrow interest group," 21 C.F.R. § 20.44(c)(1), it had not "demonstrated urgency to inform the public concerning actual or alleged Federal Government activity." Ex. D (Declaration of Sarah B. Kotler) (hereinafter "Kotler Decl.") ¶ 20 (App119). Of primary importance, the agency took into account the significant amount of information publicly available through the agency's FOIA reading room, and determined that there was not an urgency to inform the public with respect to the remaining information. Specifically, as explained by the Kotler Declaration, Plaintiffs' administrative application argued, first, that "there was an 'ongoing, public national debate' about FDA's decision to license the Comirnaty vaccine, quoting numerous individuals, including a number of Plaintiff's members, with varying opinions about the vaccine." *Id.* ¶ 19 (App119). And "[s]econd, Plaintiff noted that many organizations had mandated COVID-19 vaccines for their members or employees." *Id.*; *see* Dkt. No. 1-1 (Plaintiff's FOIA request and request for expedition). As the Kotler Declaration explains, after carefully assessing these arguments, and the citations cited in Plaintiff's application, FDA determined that:

> The fact that people may have differing opinions about a certain FDA-regulated product does not create "urgency" within the meaning of the expedited processing standard for the agency to produce an entire BLA – especially in light of the amount of information published on FDA's website. Nor does the fact that certain individuals may be administered a certain product. FDA approves medical products regularly in the course of agency business. It is not unheard of for those

9

> approvals to be the subject of controversy, and there are almost always people who are administered the products shortly after approval. Such a situation cannot be deemed to create an urgent need for the agency to expedite its review and processing of the hundreds of thousands of pages of records, especially when the agency routinely publishes summaries of safety and efficacy information on its website (as it did here). If Plaintiff's view became the standard, a great number of FDA's FOIA requests would qualify for expedited processing, and requesters with non-expedited requests would have their wait times extended – possibly significantly.

Kotler Decl. ¶ 21 (App120); *see also id.* ¶ 20 (App119) (explaining that in reaching this conclusion, FDA assessed Plaintiff's request against the backdrop of the "significant amount of information related to the Comirnaty vaccine" that FDA is posting to its official website on an ongoing basis—including, but by no means limited to, "FDA review memoranda, which include summaries of safety and effectiveness data, as well as FDA reviewers' analyses of them."); *id.* ¶¶ 11-14, 20 (further describing the ample information regarding the Comirnaty vaccine that FDA—as well as its sister agency, the Centers for Disease Control and Prevention ("CDC")—has voluntarily, and proactively, made publicly available on its website) (App115-17, App119-20).

For much the same reasons set forth in the Kotler Declaration, the Court should likewise deny Plaintiff's request for expedited processing. First, like FDA, the Court should assess this request against the backdrop of the quite substantial amounts of information about the Comirnaty vaccine that FDA and CDC have already made available to the public. Specifically, and as explained in detail in the Kotler Declaration, the FDA has made every effort to make information about the Comirnaty vaccine publicly available quickly through its official website. *See generally* Kotler Decl. ¶¶ 11-14 (App115-17).

With respect to the Pfizer vaccine in particular, the FDA has posted a host of important information on its "Comirnaty and Pfizer-BioNTech COVID-19 Vaccine" page:

10

https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/comirnaty-and-pfizer-biontech-covid-19-vaccine#comirnaty. Kotler Decl. ¶¶ 12, Exh. A (App115-16, App131-38). Materials posted there include, *inter alia*, Frequently Asked Questions for Comirnaty, information sheets for healthcare providers, regulatory information, media materials and webcasts, advisory committee information, and even links to video recordings of virtual meetings of FDA's advisory committee (the Vaccines and Related Biological Products Advisory Committee). *Id.* Further, clicking on the "Comirnaty Information" link on the above page brings the user to yet another page with more information specific to the Comirnaty vaccine: https://www.fda.gov/vaccines-blood-biologics/comirnaty. This page contains a collection of resources that FDA believes are especially useful to members of the public who wish to understand the FDA's approval decision. *Id.* ¶ 13 (App116-17). Documents posted here include the package insert for the vaccine, the Summary Basis for Regulatory Action, FDA's Approval Letter, FDA decision memoranda, and the approval history for the vaccine.[5] *Id.* Currently, FDA's Comirnaty page contains links to approximately *700 pages* of records related to the Comirnaty vaccine licensure. *Id.* These records often contain summaries of the information and data submitted by Pfizer and BioNTech that FDA reviewed and assessed, as well as FDA's assessment, that support FDA's decision to license the Comirnaty vaccine. *Id.* By way just one illustrative example, FDA has posted there the 107-page "BLA Clinical Review Memorandum" for the Corminaty vaccine, available at: https://www.fda.gov/vaccines-blood-

---

[5] Many of these records were posted shortly after the Comirnaty biological license application ("BLA") was approved on August 23, 2021. For example, FDA posted its "Summary Basis for Regulatory Action" the day after the Comirnaty BLA was approved; it posted the Action Package, including FDA discipline review memos such as clinical, statistical and toxicology reviews, approval letter, and package insert, within 25 days of approval. Kotler Decl. ¶¶ 13 (App116-17).

biologics/comirnaty (under link to "Approval History, Letters, Reviews, and Related Documents – COMIRNATY"). This memorandum includes sections entitled, "Clinical and Regulatory Background," "Submission Quality and Good Clinical Practices," Significant Efficacy/Safety Issues Related to Other Review Disciplines," Discussion of Individual Studies/Clinical Trials," and the FDA reviewers' conclusions and recommendations based on the data reviewed. *See* Kotler Decl. ¶ 13 (App116-17).

Thus, the FDA reasonably assessed that the significant amount of substantive, detailed information on the same topics encompassed by Plaintiff's FOIA request undermined any arguable justification to put Plaintiff's request at front of its processing queue, ahead of the many hundreds of pending requests that pre-dated it. And in light of this quite considerable amount of already publicly available information, this Court should do the same.

Further, the Court should also bear in mind that controversies regarding FDA approvals of biologics and other medical devices are often the subject of substantial controversy, and regardless of subject matter, FDA must handle its substantial volume of FOIA requests equally and fairly. As FDA has stressed throughout these proceedings, any grant of expedition necessarily comes at the expense of other requestors who are pushed back in the queue. Although those requestors are not before the Court in this action, they also have an interest in receiving the documents that they sought *Cf.* 5 U.S.C. § 552(a)(6)(E)(v)(II) (stating that one of the criteria for granting expedited processing for "request[s] made by a person primarily engaged in disseminatinginformation" is "urgency to inform the public"). Granting expedition liberally amounts to no expedition at all. *See Al-Fayed*, 254 F.3d at 307 n.7 (noting that "an unduly generous approach" to expedition requests would "disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none").

In sum, in light of both the substantial amount of information already publicly available regarding the Comirnaty vaccine, as well as the unfairness that special treatment of Plaintiff's request would work on other FOIA requesters, the Court should uphold FDA's decision to deny the expedition request.

## II.      Plaintiff Has Already Received all the Relief Expedition Affords Because FDA Has Started Processing Plaintiff's Request and is Proceeding as Fast As Practicable.

In any event, even if Plaintiff's FOIA received expedited treatment, Plaintiff is not entitled to an order requiring production of all responsive, non-exempt records by March 3, 2022. Even in cases of expedited FOIA processing, "[t]he statute does not assign any particular time frame to release of the records sought." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012). Rather, the statute directs an agency to "process as soon as practicable any request for records to which the agency has granted expedited processing." 5 U.S.C. § 552(a)(6)(E)(iii); *see also, e.g.*, *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("the only relief required by the FOIA with regard to expedited processing is moving an individual's request 'to the front of the agency's processing queue'"). Indeed, expedited consideration entitles requesters to move immediately to the front of the applicable processing queue, but *not* ahead of all other requests that have already been granted expedited processing. A Senate Judiciary Committee report explained the expedited processing provisions as follows:

> Once . . . the request for expedited access is granted, the agency must then proceed to process that request "as soon as practicable." No specific number of days for compliance is imposed by the bill since, depending upon the complexity of the request, the time needed for compliance may vary.  The goal is not to get the request for expedited access processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur.

EFOIA, S. Rep. No. 104-272, at 17 (1996), *available at* 1996 WL 262861.

Thus, even in cases where expedited processing is granted, courts evaluate whether the

13

processing schedule is practicable in light of other expedited FOIA requests the agency was already processing, the volume of materials, the need for agency review, and competing obligations of the same agency staffers. *See Elec. Privacy Info. Ctr. ("EPIC") v. DOJ*, 15 F. Supp. 3d 32, 43 (D.D.C. 2014). It follows that, even if, *arguendo*, the Court were to determine that Plaintiff's FOIA request is entitled to expedited treatment, the bottom-line issue still remains what processing schedule is "practicable" for FDA. For several reasons, Plaintiff's proposed schedule is not only impracticable, but well outside the realm of reason. Moreover, Plaintiff itself bears the sole responsibility for the enormously broad scope of its request; to the extent it is dissatisfied with the speed at which FDA is able to process the more than 300,000 pages encompassed by the request, Plaintiff can narrow its request and focus its terms to a more manageable set of documents. *Cf. Am. Ctr. for Law & Justice v. U.S. Dep't of Homeland Sec.*, No. 1:21-CV-01364 (TNM), --- F.3d ---, 2021 WL 5231939, at *5 (D.D.C. Nov. 10, 2021) (dismissing overly broad request and noting that, due to certain unintended incentives created by FOIA, requesters often, and perversely, have "everything to gain and little to lose from posing broad, complicated FOIA requests," which has, in turn, engendered substantial FOIA backlogs across the federal government). Conversely, FDA's proposal—which Plaintiff badly and hyperbolically mischaracterizes—properly balances the many competing interests at stake, and will conclude processing and production within the shortest period of time that is both reasonable and feasible.

A. **21 C.F.R. § 601.51 Does Not Contemplate the Immediate or Automatic Publication of the Records Sought by Plaintiff**

As a threshold matter, Plaintiff repeatedly mischaracterizes FDA's regulations.[6]

---

[6] *See* Pl. Br. at 11, 13, 15, 25; *see also* First Joint Report, Dkt. No. 18, at 2, 5; Second Joint Report, Dkt. No. 22, at 11.

Plaintiff's FOIA request seeks "all data and information for the Pfizer Vaccine enumerated in 21 C.F.R. § 601.51(e) with the exception of publicly available reports on the Vaccine Adverse Events Reporting System." Burk Decl. ¶ 24 (App011). According to Plaintiff, Section 601.51(e) directs FDA to "immediately" publish the categories of data and information it enumerates, upon the issuance of a license for a new biological product. Section 601.51(e) does no such thing, nor is it reasonably susceptible to Plaintiff's erroneous construction.

Section 601.51 generally provides for FDA's treatment of information in a biological product file, throughout the "lifecycle" of the biologics license application ("BLA") to which the biological product file corresponds. Information related to the development of a new biological product is of great commercial sensitivity, and pursuant to this regulation, FDA does not disclose such information unless and until the biological product is approved. Thus, while a BLA remains pending before FDA, its corresponding biological product file is, pursuant to Section 601.51, effectively a black box.[7]

"After a license [for a biological product] has been issued," however, Section 601.51(e) provides that several enumerated categories of information within the biological product file lose their regulatory confidentiality and become "immediately *available* for public disclosure." 21 C.F.R. § 601.51(e)(1)-(8) (listing the applicable categories of data and information) (emphasis added). Contrary to Plaintiff's repeated mischaracterization of the plain meaning of this provision, however, Section 601.51(e) does not require FDA to immediately "publish" such

---

[7] Specifically, prior to the approval of a given BLA, FDA will not disclose even the mere *existence* of the BLA "unless it has previously been publicly disclosed or acknowledged," nor will FDA disclose any "data or information in the biological product file." 21 C.F.R. § 601.51(b), (c). And even where the existence of a biological product file is "publicly disclosed or acknowledged before a license has been issued," FDA will not disclose any "data or information contained in the file," outside narrow circumstances not relevant here. *Id.* § 601.51(d)(1).

information. Rather, by operation of this provision, the specified categories of data and information lose their across-the-board confidentiality protections, such that they are now *available*—just like any other public record within the parameters of FOIA—for public disclosure, upon request. But—and again, just like any other public record within the parameters of FOIA— records that may include information and data listed in Section 601.51(e) must be carefully reviewed to determine whether one or more FOIA exemptions apply. Indeed, Plaintiff does not contend otherwise. That a disclosure review is necessary is apparent from the text of 21 C.F.R. § 601.51(e) itself, which limits disclosure of several types of information if such information falls within certain categories protected by FDA's regulations. *See* 21 C.F.R. §§ 601.51(e)(2), (3), (5), (6), (7). Further, the regulation expressly states that certain other types of information in the biological product file for an approved BLA are not available for public disclosure. 21 C.F.R. § 601.51(f). Because the categories of information not available for public disclosure under 21 C.F.R. § 601.51(f) or subject to withholding under 21 C.F.R. §§ 601.51(e)(2), (3), (5), (6), (7) can be intermingled with the types of information available for disclosure under 21 C.F.R. § 601.51(e), a disclosure review is essential.

And, as discussed at length in other filings and herein, the processing of records subject to FOIA, like any other kind of work, necessarily takes time and simply cannot be performed "immediately," Plaintiff's contentions notwithstanding. Thus, while Section 601.51(e) certainly embodies the principle of transparency—to which FDA is strongly committed—it neither directs, nor even permits, FDA to simply publish the specified categories of data and information without conducting the careful (and time-and-resource-intensive) disclosure review that Defendants have described in detail throughout these proceedings.

16

**B.** **FDA Cannot Re-Assign Untrained and Unqualified Personnel with Other, Crucial Programmatic Duties to Process Plaintiff's FOIA Request**

Plaintiff's suggestion that FDA may meet its extraordinary demand to process in excess of 300,000 pages of responsive documents in a matter of mere months by "simply" re-assigning its personnel to is likewise misguided. As the Kotler Declaration explains:

> First, performing disclosure reviews is a specialized skill that requires training and expertise that the vast majority of FDA staff does not have.  It is not reasonable to expect that a microbiologist who performs laboratory assays, a pharmacist who reviews drug applications, a badging office employee who issues credentials, or a mail room clerk who organizes mail can simply begin performing disclosure review without significant training. Moreover, it would be contrary to FDA's public health mission to pull staff off reviewing cancer treatment applications or building counterfeit medication investigations to have them conduct work for which they are untrained and unqualified.  Second, as Director of DFOI, I do not have authority to order FDA staff from other program offices – many of whom are actively involved in the agency's extensive efforts to respond to the COVID-19 pandemic – to support the agency's disclosure functions. Further, even if the agency did suddenly allocate significant new monetary resources to hire new disclosure staff, it would take substantial time to recruit and hire new staff, bring them on board, and provide them with the necessary training to become competent to perform disclosure reviews.  FDA estimates that it takes approximately two years to fully train a new disclosure reviewer.  In the meantime, experienced reviewers would be needed to supervise and review their work – thus decreasing the amount of time that experienced reviewers can spend reviewing records.

Kotler Decl. ¶ 22 (App120-21).

In short, while FDA takes its FOIA obligations seriously, and is fully committed to the important values of transparency and openness embodied by that statute, its primary mission is to protect and improve public health and safety. *See* 21 U.S.C. § 393 (establishing "Mission" of FDA). Even if it were theoretically possible for FDA to re-assign its scientists and other programmatic staff to process Plaintiffs' FOIA request—which it is not—any such reallocation of personnel would come at an unacceptable cost to public health and safety, particularly at a time when the country continues to grapple with a yet ongoing, once-in-a-century global

pandemic. The unprecedented measures sought by Plaintiff are nowhere contemplated or authorized by FOIA, and this Court should reject them in no uncertain terms.

### C.    Plaintiff's Proposal Is Contrary to the Public Interest

Additionally, ordering Defendant to disclose documents, not "as soon as practicable" as dictated by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), but rather on Plaintiff's preferred (and wholly infeasible) timetable is contrary to the public interest, in at least two respects.

First, Plaintiff's proposal fails to account for, or pay even passing lip service to, the public interest of the many hundreds of other parties with FOIA requests pending before FDA's Center for Biologics Evaluation and Research ("CBER"), whose request would be delayed. Although those requestors are not before the Court in this action, they presumably have interests in receiving the documents that they sought in order to further the important interests that motivated them to submit FOIA requests. Plaintiff has offered no explanation as to why its request is more beneficial than the hundreds of other COVID-19-related requests that Plaintiff seeks to leapfrog. Ordering FDA to complete Plaintiff's request on an artificial timeline would require that resources be diverted from other requests, thus harming other requestors' interests as well as the overall public interest in the proper administration of FOIA, including its provision for expedition. *See, e.g.*, *New York Times Co.*, 2021 WL 1614817, at *4 (denying plaintiff's request to enter a preliminary injunction ordering the agency to produce responsive records on an expedited basis and by a date certain, on the grounds that, *inter alia* "the likely massive volume of responsive data … [and] the concomitant heavy processing burden on defendants" would "result[] [in] disruption of the ordinary FOIA processing on similarly-situated FOIA requesters"); *id.* at *10 (emphasizing the interests of "similarly situated FOIA requesters, who are depending on, and adhering to, regular administrative FOIA record production processes to

obtain information important to them … Hundreds of individuals and organizations await the results of pending requests, filed ahead of plaintiff's requests, and also seek information relating to the COVID-19 pandemic …  Plaintiff's assurance that this is not a case of trying to 'leap frog' to the front of the line … rings hollow under these circumstances."); *Protect Democracy Project Inc. v. U.S. Dep't of Def.*, 263 F. Supp.3d 293, 303 (D.C.C. 2017) ("[R]equiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it.").

Second, granting Plaintiff's request for an infeasible and extraordinary processing schedule would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are carefully redacted consistent with the FOIA exemptions. The exemptions listed in § 552(b) embody a judgment that the public interest would be served best by allowing agencies to withhold certain records (or information within records). Indeed, Congress has recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised: "In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken any interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect those exemption interests." H.R. Rep. No. 104-795.

Risk of inadvertent disclosure is an especially weighty consideration here because, in Defendant's experience, a significant portion of the records at issue are likely to contain confidential commercial and/or trade secret information protected by Exemption 4, *see, e.g., Public Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) ("Because

documentation of the health and safety experience of their products will be instrumental in gaining marketing approval . . . , it seems clear that the manufacturers . . . have a commercial interest in" information submitted to FDA regarding clinical studies of investigational devices) or the personal or medical information of clinical trial participants, which is protected by Exemption 6. 5 U.S.C. § 552(b)(4), (6). Moreover, if FDA determines not to withhold information that might be confidential commercial information, it is sometimes required to provide notice to the company that submitted the information and an opportunity to file a claim for injunctive relief (a "reverse FOIA" claim). *See e.g.,* 21 C.F.R. 20.47, 20.48, 20.61(e).

With respect to the latter category of privacy concerns, Plaintiff asserts that "the documents submitted by Pfizer, which are the subject of the FOIA Request, would have already been anonymized, and therefore, the risk of disclosing such information is minimal." Pl. Br. at 25. But, despite any efforts the sponsor may have made pursuant to 21 C.F.R. § 20.63(b) to anonymize the data it submitted, FDA has an independent responsibility to ensure that any information that would identify patients or research subjects is deleted before the record is disclosed. 21 C.F.R. § 20.63(a); *see* 5 U.S.C. § 552(b)(6). And, indeed, in the productions FDA has already made, the agency has identified and redacted personal privacy information. For example, in the interim production that FDA is making today, the agency has redacted dozens of dates of birth and death, consistent with Exemption 6. Thus, the risk of inadvertent disclosure is real—and indeed, especially acute where, as here, a FOIA request implicates third party medical information, where the interest in carefully analyzing exemption questions carries particular significance.

Thus, ordering FDA to disclose documents, not "as soon as practicable" as dictated by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), but rather on any artificial, and indeed unprecedented

timetable, threatens to risk disclosure of statutorily exempt material. *See Daily Caller*, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Project*, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Baker*, 2018 WL 5723146, at *5 ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released."). Plaintiff's demand that FDA process records responsive to its Request essentially overnight fails to recognize, much less account for, this important concern.

**D.    Plaintiff Chose to File an Exceedingly Broad Request and Has Declined to Narrow It**

In similar situations, courts presented with broad and burdensome FOIA requests and a concomitant dearth in agency resources look to the requester's efforts at narrowing the request in assessing a reasonable processing rate. *See, e.g., Nat'l Day Laborer Org. Network*, 236 F. Supp. 3d at 819 ("The Court is particularly mindful" "of the strain that defendant's FOIA responsibilities may pose," "given the significant breadth of plaintiffs' request and plaintiffs' failure to effectively narrow their request at the administrative stage and during this litigation."). Plaintiff can control the scope of its FOIA request, and, to date, has refused to narrow it even slightly. In its opening memorandum, Defendant described in detail its efforts to provide Plaintiff with useful, high-level information that it could use to make informed decisions as to (1) how to narrow the scope of its request to a more manageable universe of documents; and/or (2) a priority list—that FDA will make is best efforts to honor—of the records that Plaintiff is most

interested in, and thus would like to receive soonest. *See* Def. Br. at 4-5. But although Plaintiff

provided Defendant with an initial priority list—which, as explained, Defendant is honoring in

both its initial processing efforts and its proposed schedule for future processing, *see id.* at 5-9—

Plaintiff has, to date, declined to narrow the scope of its request. Defendant reiterates that it

remains committed to working collaboratively with Plaintiff to identify additional documents for

prioritization, so that Plaintiff will receive the information it is most interested in, soonest. But if

Plaintiff continues to decline to narrow its request, it cannot have it both ways—*i.e.*,

simultaneously demand in excess of 300,000 pages of records *and* expect this volume of records

to be produced overnight. Thus, to the extent that Plaintiff is dissatisfied with the amount of time

it will take FDA to process in excess of 300,000 pages, it possesses the unilateral wherewithal to

narrow its request to a more manageable set of records. Conversely, if Plaintiff continues to

decline to narrow, that is its right under FOIA—but in that case, Plaintiff must accept the trade-

off that this work will take time.

E.    **FDA's Proposal Effectively Accelerates Plaintiff's Request to the Extent Feasible, and Will Not Take 55 Years to Complete**

As set forth in detail in FDA's opening memorandum, *see* Def. Mem. at 4-6, FDA invited

Plaintiff to provide it with a Priority List of the categories of responsive records as to which

Plaintiff has the strongest interest. And upon obtaining this list, FDA has endeavored to process

the categories of records prioritized by Plaintiff for its earliest productions. Moreover, taking into

account FDA's interim production that is scheduled to be made later on the same day as the

instant filing, FDA has, to date, already produced over 3,000 pages to Plaintiff—a count that,

under FDA's proposal, would very rapidly rise to more than *12,000 pages,* plus 11 unpaginated

.txt or SAS data files by the end of January. Thus, Plaintiff's hyperbolic assertion that FDA is

proposing an approximate 55 year response period is simply not correct—and is, indeed, directly

belied by FDA's indication that it will produce in excess of 12,000 pages in very short order.

As FDA has explained, it has not yet had an opportunity to fully assess the amount of time it will take to process other records responsive to Plaintiff's FOIA request, following its proposed January 31, 2022 production. Accordingly, from the position in which it now sits, FDA proposes to make one production at the end of each subsequent month totaling a *minimum* of 500 pages.[8] Moreover, as FDA has repeatedly explained, this proposed minimum is a floor, not a ceiling; thus, and if FDA is able to process records at a faster pace, its proposal commits it to do so—as, indeed, is reflected by the good faith, accelerated efforts the agency has already made and committed to continue to make, resulting in the production of in excess of 12,000 pages in a matter of mere months.

Moreover, as FDA has emphasized, its proposed rate of a minimum of 500 pages per month is based, in substantial part, on certain limitations that inhere, at this early stage, in the agency's ability to assess the full corpus of responsive records. FDA expects to be in a better position to make a more refined and accurate assessment regarding the feasibility of a more streamlined processing schedule by the time it makes the January 31, 2022 production. But—for all of the reasons Defendant has explained—FDA simply cannot, at this juncture, commit to a schedule of more than 500 pages per month without harming the public interest in the orderly,

---

[8] As Defendant has explained in prior filings, 500 pages per month is consistent with processing schedules entered by courts around the country--even where that schedule will result in lengthy production periods . *See* Def. Br. at 13; Dkt. No. 18 at 8 n.5; Dkt. No. 20 at 4 n.3; *see also White v. Exec. Off. Of U.S. Atty's*, 444 F. Supp. 3d 930, 965 (S.D. Ill. 2020) (approving 500 pages per month and nine-year production period); *Colbert v. FBI*, No.16-cv-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (approving 500 pages per month and a decade-long production period); *cf. Nat'l Sec. Counselors v. U.S. Dep't of Justice*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters").

fair, and efficient administration of FOIA.

Accordingly, to the extent that the Court declines to adopt FDA's proposal in full, the agency respectfully requests that the Court partially adopt its proposal now—*i.e.*, approve FDA's proposal for the production of more than 12,000 pages by January 31, 2022—and then revisit the issue of a longer-term processing and production schedule with both parties in February 2022. That approach would afford Plaintiff time to assess how it might productively narrow its request; afford FDA more time to assess whether faster processing may be possible for at least certain subsets of the responsive records; and also afford both parties more time to use their best efforts to negotiate a mutually agreeable processing schedule. In the meantime, the partial adoption of FDA's proposal will ensure that the agency maintains a full-court press ahead, while adequately protecting the important public interests discussing in Defendant's opening brief, and above.

**III.**     **If Plaintiff Expands the Meaning of its FOIA Request, Substantial Additional Processing Time Will Be Necessary**

Finally, Plaintiff in its reply brief takes issue with Defendant's understanding of the FOIA request at issue. Defendant believes that its interpretation of the request is reasonable. However, in the event Plaintiff insists on an expanded interpretation of its request, it faces unavoidable trade-offs in this choice: a broader construction of Plaintiffs request would capture tens of thousands of additional documents beyond the universe of approximately 329,000 pages (and at least 126 .txt and/or SAS data files) identified to date, and thus add substantial additional time for completion of processing.

Plaintiff's FOIA request sought "all data and information for the Pfizer Vaccine enumerated in 21 C.F.R. § 601.51(e) with the exception of publicly available reports on the Vaccine Adverse Events Reporting System." Burk Decl. ¶ 24 (App011). Because the regulation cited by Plaintiff, 21 C.F.R. § 601.51, addresses "data and information in applications for

biologics licenses," FDA interpreted Plaintiff's FOIA request as a request for all publicly releasable information in the original biologics license application ("BLA") submitted by BioNTech-Pfizerfor the Comirnaty vaccine with internal file number STN 125742/0/0. Burk Decl. ¶ 25 (App011–12). However, as defense counsel explained to Plaintiff's counsel in the course of the parties' conferral efforts: the Cominarty biological product file, of which the BLA is a subset:

> also contains supplements, amendments, and product correspondence. FDA estimates that there are approximately 39,000 pages of records in that category. In addition, there may be investigational new drug records [("IND")] that may be supportive of the BLA. Although we cannot provide a precise count, FDA estimates that there would be tens of thousands of additional pages in this category. These page counts are in addition to FDA's estimate of 329,000+ pages (plus data files) in the original Cominarty BLA.

Ex. E (Dec. 2, 2021 email from Courtney Enlow to Aaron Siri) (App140-41).

After Plaintiff's counsel inquired further about these additional pages, defense counsel further elaborated that:

> FDA knows that there are a number of records in the IND section of the biological product file; however, it would take a closer review of those pages to determine which information would be considered supportive of the BLA/licensure and, thus, publicly available (subject to disclosure review) under 21 C.F.R. 601.51(e).

> You may already be aware of this, but to make sure we're on the same page – IND files may include studies for several forms (different dose strengths, formulations, etc.) and/or indications (different disease conditions, age groups, etc.). It's possible for a biological product to be approved for only a subset of the variations/indications for which it was originally studied. The portions of the IND file related to the approved conditions would become part of the biological product file that would be available for disclosure (subject to confidentiality review) once the product is approved; portions of the IND related to unapproved forms/indications would remain confidential (as would the existence of these portions).

> To be clear, FDA disclosure staff have not yet determined whether portions of the IND section of the Comirnaty file refer to forms or conditions that are have not been approved under a BLA. Thus, this response should not be understood as an indication that any parts of the biological product file relate to INDs associated

with a product that has not been approved. But, before performing that review (which would require a substantial investment of time from FDA), we cannot provide a precise page estimate. Because, again, the FDA assesses that that this effort does not justify the diversion of resources away from its processing work, it also cannot accommodate this request at this time.

Ex. F (Dec. 10, 2021 email from Antonia Konkoly to Aaron Siri) (App145-46).

While FDA believes that its original (and extant) construction of Plaintiff's request is both proper and reasonable, to the extent that Plaintiff wishes to additionally obtain one or both of the above-described additional categories of documents, FDA can expand its interpretation of the request. That choice is Plaintiff's to make, but Plaintiff must acknowledge and accept the unavoidable consequence that tens of thousands of documents simply cannot be added to the FDA's processing queue without moving the goal post of the processing completion date significantly further into the future.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter FDA's proposed processing schedule.

Dated: December 13, 2021                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General
                                            Civil Division

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director
                                            Federal Programs Branch

                                            */s/ Antonia Konkoly*
                                            ANTONIA KONKOLY
                                            Trial Attorney
                                            United States Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 11110
Washington, D.C. 20005
Tel: (202) 514-2395
Email: antonia.konkoly@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2021, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the Northern District of Texas using the CM/ECF filing system.

*/s/ Antonia Konkoly*
ANTONIA KONKOLY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 11110
Washington, D.C. 20005
Tel: (202) 514-2395
Email: antonia.konkoly@usdoj.gov

28