UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**PUBLIC HEALTH AND MEDICAL PROFESSIONALS FOR TRANSPARENCY,**

Plaintiff,

v. **No. 4:21-cv-1058-P**

**FOOD AND DRUG ADMINISTRATION,**

Defendant.

## OPINION & ORDER

Before the Court is Plaintiff Public Health and Medical Professionals for Transparency's ("PHMPT") Motion for Attorneys' Fees and Litigation Costs ("Motion"). ECF No. 131. Defendant United States Food and Drug Administration ("FDA") responded, ECF No. 136, PHMPT replied, ECF No. 140, and each party filed surreply, ECF Nos. 145, 148. Having considered the Motion, the briefing, the record, and the applicable law, the Court **GRANTS in part** and **DENIES in part**.

This case concerned a multi-year Freedom of Information Act ("FOIA") saga. PHMPT's suit secured, on a schedule this Court set and enforced, more than 1.8 million pages of records underlying FDA's licensure of the Pfizer-BioNTech COVID-19 vaccine. According to FOIA, PHPMT is entitled to reasonable fees. FOIA shifts the reasonable costs of litigating against the government. However, it does not shift the cost of producing records, which FDA bore, nor the cost of reading and cataloguing them once produced, which every requester bears. A large share of the hours PHMPT claims were spent reviewing the documents FDA produced. But some of these hours fell into the category of costs naturally incident to a FOIA request. Accordingly, the Court reduces the hours claimed for indexing and cataloguing the records. The Court further approves the same rates this District endorsed for the same lead

counsel in *Chrisman v. Austin*, while adjusting for timing and the relative complexity of the instant case.

Finally, the Court denies the requested enhancement and declines to make a written finding under 5 U.S.C. § 552(a)(4)(F). The Court therefore awards $612,728.55 in attorney's fees and $5,900 in costs, subject to the Rule 68 procedure set out in Part III.G.

## BACKGROUND

### A. The Request and Production Orders

In August 2021, PHMPT asked FDA for "[a]ll data and information for the for the Pfizer Vaccine enumerated in 21 C.F.R. § 601.51(e)," excluding publicly available adverse-event reports. ECF No. 1-1 at 1. PHMPT sued the next month. From the start, FDA did not dispute that PHMPT was entitled to the records; the dispute was about timing. ECF No. 34. FDA proposed to produce about 12,00 pages by January 31, 2022, and at least 500 pages per month after that. ECF No. 22 at 8–9; *see* ECF No. 35 at 3. At that pace, production would have taken decades.

After a scheduling conference, the Court rejected FDA's proposal and ordered FDA to produce the remaining records at a rate of 55,000 pages every 30 days. ECF No. 35. FDA moved to modify that schedule so that it would have to produce only 10,000 pages in each of the first two months while it built up its capacity, ECF No. 36. At that time, Pfizer moved to intervene. ECF No. 40. After a hearing, ECF No. 58, the parties agreed to a schedule that kept the two reduced months but required FDA to make up the shortfall over the next four, so that by August 2022 FDA would have processed as many pages as the original order required. The Court adopted that schedule. ECF No. 56. The Court held Pfizer's motion in abeyance and, in August 2022, denied it. ECF Nos. 57, 63.

The case then settled into a routine. FDA produced records each month, and the parties filed joint status reports, roughly once a quarter, that largely recited FDA's production figures. *See, e.g.,* ECF Nos. 59, 62, 64, 65, 67, 69, 74. In December 2023, FDA reported that it had processed roughly 1.2 million pages and that production was complete. ECF No.

75. In October 2024, PHMPT waived any challenge to the redactions and withholdings in FDA's productions. ECF No. 87.

### B. The EUA File

The case's one substantive dispute followed. In April 2024, in correspondence in a related case before this Court, No. 4:22-cv-00915-P ("*PHMPT II*"), FDA disclosed the existence of its emergency-use-authorization ("EUA") file for the vaccine in response to PHMPT's inquiry about a missing record. FDA acknowledged the file but took the position that it was outside the scope of PHMPT's request. The Parties then cross-moved for summary judgment. ECF Nos. 90, 93. The Court observed that there was only one issue remaining in the case— whether the EUA file was responsive to Plaintiff's FOIA request and must be produced—and resolved that issue in PHMPT's favor. ECF No. 101 at 5. The Court ordered FDA to produce the EUA file by June 30, 2025.

In response, FDA moved under Rule 59(e) to stay the production deadline until it completed production in *PHMPT II*. ECF No. 103. The Court denied the motion, ECF No. 108, finding that FDA "attempted to hide the file's existence until roughly eight months after it had 'completed production,'" while also finding that FDA has "demonstrated due diligence in complying with the Court's prior orders." ECF No. 108 at 5–6, 8. FDA produced the EUA file, which totaled more than 600,000 pages, by the deadline. ECF No. 110. In all, FDA processed more than 1.8 million pages, at a cost it estimates at $5.1 million. ECF No. 136.

### C. The Fee Dispute

In October 2025, the parties reported that all production issues had been resolved. ECF No. 112. They could not agree on fees, and a settlement conference before United States Magistrate Judge Hal R. Ray, Jr. did not resolve the matter. ECF No. 126.

PHMPT now seeks $854,673 for 1,487.4 hours billed by Siri & Glimstad LLP, an enhancement in an amount it leaves to the Court, $6,800 for local counsel, $5,900.72 in costs, and a written finding under 5 U.S.C. § 552(a)(4)(F). ECF No. 133 at 43. Its reply adds $135,962.42 for the fee litigation itself. ECF No. 140. FDA concedes that PHMPT is eligible for fees because it substantially prevailed but argues that the

Court should deny the request outright because of the amount requested. Alternatively, FDA asks that the Court award no more than $200,728.78 in fees and costs, plus no more than $46,128.60 in fees on fees. ECF Nos 136, 145.

## LEGAL STANDARD

FOIA permits a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 522(a)(4)(E)(i). If the plaintiff is eligible and entitled to fees, *Batton v. IRS,* 718 F.3d 522, 525 (5th Cir. 2013), the Court multiplies the hours reasonably expended by a reasonable hourly rate. *DaSilva v. U.S. Citizenship & Immigr. Servs.*, 599 F. App'x 535, 541 (5th Cir. 2014). The applicant must document the hours and show billing judgment; where either is lacking, the Court may reduce the hours by a percentage. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The resulting lodestar is presumptively reasonable. *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552–54 (2010).

Two principles guide this review. The essential goal is to do "rough justice, not to achieve auditing perfection," and this Court need not become a "green-eyeshade accountant." *Fox v. Vice*. 563 U.S. 826, 838 (2011). And the Court addresses the objections actually made; it is not obligated sua sponte to sift through fee records to unearth vague entries or block billing. *See, e.g.*, *Mobu Enters. Pty Ltd. v. John Galt Sols., Inc.*, No. 3:23-cv-617-BN, 2026 WL 2819704, 2026 U.S. Dist. LEXIS 213416, at *4 (N.D. Tex. Sept. 18, 2026).

## ANALYSIS

### A. PHMPT is Entitled to Fees Because it Substantially Prevailed

FDA does not dispute PHMPT's eligibility or entitlement, ECF No. 136 at 7, and rightly so. PHMPT obtained relief through orders and compelling production, ECF Nos. 35, 56, 101, and the entitlement factors favor an award. *See Texas v. ICC*, 935 F.2d 728, 730 (5th Cir. 1991). FDA argues instead that the request is so excessive that the Court should

award nothing, or at least substantially reduce them. ECF No. 136. The Court declines to zero the award—PHMPT did real work and prevailed. The problem with the request is not that it is so excessive. The problem is that two systematic errors upwardly adjusted the fee request. First, the request charges FDA for work that FOIA does not shift. Second, the request prices the work at rates the law does not allow. The proper remedy is therefore reduction.

### B. Hours Reasonably Expended

PHMPT claims 1,487.4 hours, after writing off 45.9 hours. ECF No. 133 at 23, 26. Its billing records, organized into nine phases, reconcile to that figure. ECF No. 132. FDA asks the Court to cut the fee by a further 43% through across-the-board reductions for overstaffing, vague entries, block billing, document review, and clerical work. ECF No. 136. Where FDA objects to a category of work, the Court addresses the category, using a percentage where the entries cannot readily be sorted. *See Saizan*, 448 F.3d at 799. Where FDA offers examples and asks the Court to infer a pervasive problem, the Court addresses the entries FDA identifies and "will not then go hunting for others." *Mobu*, 2026 U.S. Dist. LEXIS 213416, at *18.

1. Document review and indexing receives the largest discount

The largest category is review. PHMPT billed 647.7 hours in the phase it calls "BLA File Production Monitoring and Document Review," from February 2022 through December 2023, and 167.5 more in indexing the EUA file. ECF No. 132 at App0022–23, 48–54, 66–67. A litigation assistant, Irene Pi, billed 519.0 hours of the first figure and all of the second. Her work consisted of "systematically cataloging each monthly production into a master tracking spreadsheet, recording document identifiers and content descriptions, flagging redactions and potential withholdings, identifying missing appendices, attachments, exhibits, and non-functional hyperlinks within produced documents, confirming production numbers, and cross-referencing each production against prior releases to identify gaps." ECF No. 132 at App0012–13. FDA contends that document review is not compensable in a FOIA case. ECF No. 136 at 25–27. Not so.

While the Fifth Circuit has held that a district court did not abuse its discretion in denying fees for reviewing FOIA production, *DaSilva*, 599 Fed. Appx. at 544, other courts have drawn the line by purpose. Time a requester would have spent anyway, had the agency produced records without a lawsuit, is "simply the price of making such a request." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 825 F. Supp 2d 226, 231 (D.D.C. 2011); *accord Am. Immigr. Council v. DHS*, 82 F. Supp. 3d 396, 412 (D.D.C. 2015). But, as this case no doubt demonstrates, review to evaluate the sufficiency of the release is part of the litigation costs reasonably incurred in the case. *See Elec. Priv. Info. Ctr. v. DHS*, 811 F. Supp. 2d 216, 240 (D.D.C. 2011). PHMPT, as the applicant, bears the burden of showing which of its hours fall on the compensable side of that line. Where the records do not separate the two, the Court may reduce the hours by a percentage, *see Saizan*, 448 F.3d at 799, and there is no precise rule or formula for setting it. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

*a. The BLA Review*

The BLA review turned out to be essential to the litigation. By cataloguing what FDA produced, PHMPT identified what FDA omitted. Some degree of systematic indexing was required to compile adequacy-of-search issues and raise them with FDA—which, by PHMPT's account, led to disclosure of the EUA file and to the one merits dispute in the case, in which PHMPT prevailed. ECF Nos. 132, 133. Using this exemplar of compensable document review, PHMPT argues that most of the document review work was done "to assess the adequacy of the search and the extent and validity of any withholdings or redactions," and that "indexing" as PHMPT's timekeepers used the word, meant "adequacy and redaction triage, missing-items analysis, and production tracking to support summary judgment briefing and meet-and-confer obligations." ECF No. 132 at App0025–26.

But the billing entries do not show as much. About twenty of Ms. Pi's 519 hours are described as checking the productions for completeness and roughly twenty-five as comparing data about trial subjects. Nearly all the rest describe reviewing, cataloguing, itemizing, or indexing the documents. The phase's other 128.7 hours (apart from status reports,

correspondence with FDA's counsel, and coordination of review) went mostly to reviewing particular productions and researching what they showed. ECF No. 132 at App0048–54.

The problem is that the work expended cataloguing, itemizing, and indexing the documents into a spreadsheet did two jobs at once. It showed PHMPT what FDA had not produced, which is litigation work. But it also showed PHMPT what FDA had produced—what each document was and what it contained—which PHMPT needed whether or not it sued. PHMPT "exists solely to obtain and disseminate the data relied upon by the FDA to license COVID-19 vaccines," ECF No. 136 at 16 (quoting PHMPT's website), and it has done so: it posted the productions "for free public download" and points to independent analyses of them, including a book-length compilation. ECF No. 133 at 9. Some entries in this phase therefore reflect that interest in the substance of the records rather than in FDA's compliance, such as researching medical literature and reviewing death and injury reports in a production. ECF No. 132 at App0048, 50. That second job is the price of making such a request. PHMPT invokes *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, which allows for fees for monitoring that is useful and of a type ordinarily necessary to secure the result. 478 U.S. 546, 561 (1986). But that takes care of the first job, not the second. A requester that obtained these records without suing would still have had to learn what they contained before publishing or using them, and FOIA does not shift that cost to the government. Nor is data entry recoverable at attorney or paralegal rates no matter who performs it. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

The entries, most of which describe indexing or cataloguing each month's release, do not separate the two jobs, and PHMTP did not try to. It wrote off a mere 8.7 of the 656.4 hours it recorded in this phase, and none of Ms. Pi's time. ECF No. 132 at App0021. When an applicant has not exercised billing judgment, the remedy is "a reduction of the award by the percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799. However, because the catalogue had concrete litigation value, the Court does not deny outright fees for this work, as it would have discretion to do. *DaSilva*, 599 F.App'x at 543. But

PHMPT bears the burden of showing which hours served the litigation, and for a substantial share of the cataloguing it has not made that showing. The Court thus reduces the hours in this phase by 40%, from 647.7 to 388.62.

*b. The EUA Indexing*

The EUA indexing stands differently. By the time the FDA produced the EUA file in May and June 2025, the Court had resolved the only merits question in the case. ECF Nos. 101, 108. There was no summary-judgment briefing for indexing to support, and each of Ms. Pi's thirty entries describes the work as indexing the EUA documents. ECF No. 132 at App0066–67. No doubt some portion of these hours had litigation value. For example, while it was underway, counsel raised missing records with FDA and asked Ms. Pi to locate a document to send to FDA's counsel, ECF No. 132 at App0066, and FDA later produced 206 pages that had inadvertently been omitted. ECF No. 136 at 6 n.1. But with the scope of FDA's obligation settled, the hours dedicated to compliance account for a much smaller share of the work than the gap-checking did in the BLA phase. Accordingly, the Court reduces these hours by 60%, from 167.5 to 67.00.

2. <u>The scheduling proceedings are not discounted</u>

FDA objects that seven attorneys and four support staff spent 334 hours on the December 2021 scheduling conference and another 171 hours on FDA's motion to modify the schedule and Pfizer's motion to intervene. ECF No. 136 at 20–22. The production schedule, however, was the heart of this case. FDA did not dispute that PHMPT was entitled to the records, and FDA's proposal would have taken decades to produce them. FDA's figures also overstate the time by failing to take into account write offs for local counsel and the correction of a filing error. ECF No. 132 at App 0024. FDA identifies no particular service that was duplicative and the Court declines to eliminate wholesale the services of the attorneys. The modification dispute continued that scheduling dispute and should also be awarded in full accordingly.

Neither should the time spent litigating against Pfizer be excluded from the award. True, an award against the government is not

appropriate in a phase of the litigation in which the party seeking an award was opposed only by other, non-government parties. *Avoyelles Sportsmen's League, Inc.* v. *Marsh*, 786 F.2d 631, 632 (5th Cir. 1986). But here PHMPT was not opposed only by Pfizer. Pfizer moved to intervene at the Court's and Government's suggestions, ECF No. 40, and FDA consented and told the Court that intervention would facilitate an orderly resolution of the matter. ECF No. 46. PHMPT's response sought to keep Pfizer from altering or delaying the schedule that FDA was then asking the court to modify. ECF No. 47. The motions were briefed together, argued at the same hearing, and in many instances billed in the same entries. ECF No. 132 at App0044–46.

Finally, FDA identifies two block-billed entries from this phase—a 6.4-hour entry and an 8.9-hour entry—and asks for a reduction of at least 15% of the entire fee. ECF No 136 at 24–25. Both entries describe compensable work on the oppositions filed that week, and two entries do not justify an across-the-board reduction. The Court thus makes no reduction to either scheduling phase.

3. <u>Specific entries are disallowed on an ad hoc basis</u>

FDA also identifies entries that it says are clerical, concern pro hac vice applications, or are too vague to review, and it asks for further across-the-board reductions of 3% and 5%. ECF No. 136 at 23–24, 27–28. Of FDA's three clerical examples, two were already written off, ECF No. 132 at App0070, and the Court deducts the third (0.2 hours). ECF No. 132 at App0034. Time spent obtaining pro hac vice admissions is a cost of PHMPT's choice of out-of-district counsel, and the court deducts five entries devoted to it (6.5 hours). Two others mention it only alongside compensable tasks, and the Court does not parse them. ECF No. 132 at App0034. Reviewing local rules while preparing a filing is part of preparing it, and those entries stand. Three of FDA's examples of vague entries redact their subjects and provide little information from which to determine the reasonableness of the hours expended on tasks so sparsely referred to. Those entries (5.3 hours) are disallowed. *See* ECF No. 136 at 23. The others are reasonably clear from context, ECF No. 132 at App0042, or fall within review category addressed above, ECF No. 132 at App0048. The Court declines to extend these deductions, by

percentage, to entries FDA has not identified. And because the reductions above supply the billing judgment the application lacked, the Court declines FDA's request for a further across-the-board cut based on specifically identified entries.

4. <u>Summary of hours</u>

| **Category** | **Billed** | **Reduction** | **Awarded** |
|---|---|---|---|
| Scheduling, modification, and Pfizer intervention (Nov. 2021–Feb. 2022) | 466.7 | None | 466.7 |
| BLA production review and indexing (Feb. 2022–Dec. 2023) | 647.7 | 40% | 388.62 |
| EUA file indexing (2025) | 167.5 | 60% | 67.00 |
| Identified clerical, pro hac vice, and redacted entries | 12.0 | 100% | 0.0 |
| All other hours, including EUA dispute | 193.5 | None | 193.5 |
| Total | 1,487.4 | | 1,115.82 |

### C. Reasonable Hourly Rates

PHMPT seeks $1,230 per hour for Aaron Siri and Mason Barney, $1,020 for Elizabeth Brehm and four others, $625 for three junior attorneys, and $225 to $375 for its paralegals and other staff—all at 2026 rates. ECF No. 132 at App0003–04, App0026–27. FDA asks for a 35% across-the-board reduction. ECF No. 136 at 14–19. The relevant market is this District, *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002), and PHMPT argues that its rates reflect it. ECF No. 133 at 19.

1. <u>Reasonable rates are to be calculated according to when the work was performed</u>

PHMPT asks for 2026 rates for all of its work, reasoning that reasonable rates are the market rates "at the time of the fee application." ECF No. 133 at 19 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). *Blum* does not address which year's market governs. The logic of *Jenkins*, however, does: paying for past work at "current rather than historic hourly rates" is a way of compensating for "delay in payment." 491 U.S. at 28–84. Yet that kind of compensation is not available against the United States. "Interest and a delay factor share an identical function," and absent an express waiver of sovereign immunity, neither may be awarded against the government. *Libr. Cong. v. Shaw*, 487 U.S. 310, 321–22 (1986). *Jenkins* allowed compensation for delay in fee award against a State because such awards are "costs" not subject to "Eleventh Amendment strictures." 491 U.S. at 281 n.3 But it confined that holding to cases "[o]utside the context of the 'no-interest rule' of federal immunity"—a rule "applicable to the immunity of the United States." *Id*. FOIA's fee provision contains no such waiver and so fees against the United States must rest on the rates that prevailed when the work was performed. *See Perales v. Casillas*, 950 F.2d 1066, 1079 (5th Cir. 1992) (same rule for cost-of-living adjustments under the Equal Access to Justice Act).

The reasonable hourly rate is determined according to the community in which the district court sits. *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998). And, as argued above, it must be those prevailing in the community *when the work was performed*, not when the fee is awarded. The most specific evidence of this is *Chrisman v. Austin*, No. 6:22-cv-049-H, 2024 WL 3864614, 2024 U.S. Dist. LEXIS 147422 (N.D. Tex. Aug. 16, 2024), in which Judge Hendrix approved rates for several of these timekeepers after assessing them against declarations in the Dallas-Fort Worth market in 2024. *Id.* at *63-68.

Those rates are the best evidence the record contains, but they overstate the value of this work in two respects. First, they are 2024 rates, and most of the work here was performed earlier. Second, they are rates for complex litigation. Judge Hendrix approved "rates in line with large national firms in Dallas" for a case involving RFRA, class-action, and military deference, noting that it was not a "'run-of-the mill' civil rights case." *Id.* This was not an ordinary case either, but at its core it turned on a production schedule and a single question about scope.

The other evidence points even lower, including this Court's rate findings in commercial cases and the rate PHMPT's own local counsel charges. *See Mays v. Meridian Sec. Ins. Co.*, No 4:22-cv-1150-P, 2024 WL 821198, at *5 (N.D. Tex. Jan. 25, 2024) ($400 to $550); ECF No. 132 at App0095. And PHMPT's other in-district authorities—APA and RFRA litigation, thousands of ERISA benefits claims, and an ERISA class action tried to the bench—are not good evidence that the market pays more for a FOIA scheduling dispute. *See* ECF No. 133 at 20–21. The Court therefore starts with *Chrisman*'s rates and adjusts them for timing and complexity.

The Court does not award any timekeeper more than PHMPT requests, and Mr. Siri's travel time is compensated at half rate, as billed. ECF No. 132 at App0025. They are calculated as follows:

- <u>Aaron Siri, Mason Barney, and Mark Taylor</u>: $975, the rate *Chrisman* approved for Mr. Siri. Mr. Barney and Ms. Taylor are senior lawyers in the same tier of PHMPT's rate structure; Mr. Taylor billed only for the fee litigation. ECF No. 132 at App0003–06.
- <u>Elizabeth Brehm</u>: $975, the rate *Chrisman* approved for her.
- <u>Caroline Tucker:</u> $875, the rate *Chrisman* approved for a Siri & Glimstad attorney with comparable experience. 2024 U.S. Dist. LEXIS 147422 at *66-67; ECF No. 132 at App0009.
- <u>Caroline Cline, Dana Smith, and Gabrielle Palmer:</u> $775, the rate *Chrisman* approved for Ms. Cline and Ms. Smith. PHMPT places Ms. Palmer in the same tier. ECF No. 132 at App0004.
- <u>Junior Attorneys</u>: (Laura Carroll, Collin Farnsworth, and Sonal Jain): $625, as requested. *Chrisman* did not address

attorneys at their level, and $625 is below every attorney rate *Chrisman* approved and within the range this District found reasonable.

- Paralegals and other legal staff: $240, the rate *Chrisman* approved
- Litigation assistants: $225, as PHMPT requests. ECF No. 132.

2. The rates are adjusted for timing and complexity

Those rates best approximate the reasonable hourly rate in this case, but the Court makes two adjustments—one for timing, and one for complexity, which add up to a reduction of 15%.

First, these rates reflect the market in 2024—or, for the junior attorneys and litigation assistants, 2026—but about four-fifths of the lodestar reflects work performed from 2021 to 2023, when rates were lower. PHMPT's own growth figures put 2021 rates about 15% below 2024 levels and 2023 rates about 6% below. ECF No. 132 at App0018. Or, to use another point of reference, the rates awarded to its local counsel for the vaccine-program work rose about 18% from 2021 to 2024. ECF No 132 at App0093. Weighted by when the work was performed—including the smaller share performed in 2025, when rates were about 7% higher than in 2024—those figures net a difference of about 10%. The Court accordingly reduces the merits lodestar by 10%.

Second, this case was less complex than *Chrisman*. The other evidence discussed above would support a larger reduction on that ground, but the Court resolves doubt in PHMPT's favor. The Court accordingly reduces the merits lodestar by a further 5%. Rather than set a separate rate for each timekeeper for each year, the Court makes both adjustments with a single reduction of 15% to the merits lodestar. Multiplying the reasonable rates by the approved hours, less the 15% reduction, merits lodestar is therefore $528,504.71.

3. <u>Summary of calculated lodestar</u>

| **Timekeeper** | **Rate** | | **Hours** | **Lodestar** |
|---|---|---|---|---|
| Siri, Barney | $975.00 | | 191.14 | $186,361.50 |
| Siri (travel, ½ rate) | $487.50 | | 43.50 | $21,206.25 |
| Brehm | $975.00 | | 146.94 | $143.266.50 |
| Tucker | $875.00 | | 0.4 | $350.00 |
| Palmer, Cline, Smith | $775.00 | | 156.10 | $120,977.50 |
| Junior attorneys | $625.00 | | 43.44 | $27,150.00 |
| Paralegals and other legal | $240.00 | | 149.40 | $35,856.00 |
| Litigation Assistants | $225.00 | | 384.90 | $86.602.50 |
| Subtotal | | | 1,15.82 | $621,770.25 |
| Subtotal less 15% | | | | $528.504.71 |

**D. The Requested Enhancement**

PHMPT seeks an enhancement based on the results obtained, the difficulty of the EUA issue, and the need to deter government misconduct. ECF No. 133 at 32–40. It leaves the amount to the Court. But the results and the difficulty of the issues are already reflected in the rates and the hours allowed. *Perdue*, 559 U.S. at 553–40. And while FOIA's fee provision serves to deter the government from opposing justifiable requests, shifting a reasonable fee serves that purpose. The Court addressed FDA's handling of the EUA file in the orders that compelled its production, ECF Nos. 101, 108, and declines to adjust the lodestar further in the form of an enhancement. And, to the extent the *Johnson* factors support a downward adjustment, that reduction is already subsumed by the lodestar calculation. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 714 (5th Cir. 1974). The factors do not warrant further adjustment that the lodestar did not already capture by considering complexity, timing, and degree of success.

**E. Fees on Fees**

A prevailing FOIA plaintiff may recover reasonable fees for litigating its fee claim. *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985). But "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990).

PHMPT seeks $131,796.00 for 150.7 hours of fee litigation by Mr. Siri, Mr. Taylor, and a paralegal, $58,657 of which accrued after the Rule 68 offer. ECF No. 141 at App0004–05, App0019–24. That work was done in 2026, so the timing concern behind the merits reduction does not arise, and PHMPT exercised billing judgment in seeking less than half of the hours its timekeepers recorded. ECF No. 141 at App0003–05. The Court therefore accepts the requested rates for this work, less the 5% reduction for the relative simplicity of this case, which values it at $125,206.20.[1]

PHMPT recovers about 62% of the merits lodestar it sought, having lost on a substantial share of its hours and rates, and on its request for an enhancement and § 522(a)(4)(F) finding, so the Court awards the same share of the fees on fees request.[2] Together, those reductions also answer FDA's objections to the rates, staffing, and billing practices in the fee litigation. ECF No. 145 at 2–3. The fee litigation award is therefore $77,423.84, of which $34,458.18 is for work after May 23, 2026.

**F. Costs**

FDA does not contest the $5,900.72 in costs or the $6,800 billed by local counsel, all of which predate the Rule 68 offer, and the Court awards both. ECF No. 136. FDA objects to the $4,116.42 in costs first

[1]The complexity reduction applies because it reflects the reasonable rate for this case, and a fee motion is no more complex than the case it concerns. *See Chrisman*, 2024 U.S. Dist. LEXIS 147422, at *48 (describing fee litigation as "a more common motion.").

[2]This figure reflects the ratio of the merits fees awarded to Siri & Glimstad, $528,504.71, to the merits fees it requested, $854,673.00. ECF No. 132 at App0026. Rather than sort PHMPT's fee-litigation entries by issue, the Court applies PHMPT's overall degree of success to all of them. *See Hensley*, 461 U.S. at 436 ("[T]he most critical factor is the degree of success obtained.")

requested in the reply that PHMPT listed without documentation or explanation. ECF No. 145 at 3–4; *see* ECF No. 132 at App0026. PHMPT did not respond and therefore has not carried its burden to support them. They are accordingly denied.

**G. FDA's Rule 68 Offer of Judgment**

FDA served a Rule 68 offer of judgment on May 23, 2026, which PHMPT rejected. ECF No. 136 at 7, 41. If "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." FED R. CIV. P. 68(d). Because FOIA treats attorney fees as part of the plaintiff's "litigation costs," post-offer fees fall within the rule. 5 U.S.C § 552(a)(4)(i). At FDA's request, offer awards are as follows:

| **Category** | **Through 5/23/2026** | **After 5/23/2026** | **Total** |
|---|---|---|---|
| Merits Fees | $528,504.71 | None | $528,504.71 |
| Fees on Fees | $42,965.66 | $34,458.18 | $77,423.84 |
| Local Counsel | $6,800 | None | $6,800 |
| Costs | $5,900.72 | None | $5,900.72 |
| Total | $584,171.09 | $34,458.18 | $618,629.27 |

**H. Section 552(a)(4)(F)**

PHMPT asks for a written finding that FDA's withholding of the EUA file "raise questions whether agency personnel acted arbitrary or capriciously with respect to withholding." 5 U.S.C. § 552(a)(4)(F)(i). The Court declines to make such a finding. It stands by its finding that FDA "attempted to hide the file's existence." ECF No. 108 at 5–6. But the dispute was, at bottom, about the scope of a request defined by federal regulation. The Court resolved that on summary judgment. ECF No. 101. The statute, by contrast, is directed at individual "agency personnel," and nothing in this record identifies an individual decision that was arbitrary or capricious, as distinct from an institutional position the Court rejected. The Court also found that FDA

demonstrated due diligence in complying with the Court's prior orders. ECF No. 108. Its prior orders and this award are sufficient response.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** PHMPT's Motion for Attorneys' Fees and Litigation Costs, ECF No. 131, and **ORDERS**:

1. PHMPT is awarded $605,928.55 in attorneys' fees for the work for Siri & Glimstad LLP, consisting of $528,504.71 for merits litigation and $77,423.84 for fee litigation.
2. PHMPT is awarded $6,800 in attorneys' fees for the work of local counsel John R. Howie, Jr. PHMPT is awarded $5,900.72 in costs. The additional costs requested in PHMPT's reply are **DENIED**.
3. PHMPT's request for an enhancement and for a written finding under § 552(a)(4)(F) are **DENIED**.
4. Of these amounts, $548,171.09 was incurred before May 23, 2026, and $34,358.18 was incurred after that date. Within seven days, FDA is **ORDERED** to file its Rule 68 offer of judgment, under seal if it wishes, or a notice that the pre-offer award exceeds the offer. PHMPT may respond within seven days after FDA's filing. The Court will then enter final judgment.

**SO ORDERED** on this **29th day** of **October, 2026.**

Mark T. Pittman

Mark T. Pittman
UNITED STATES DISTRICT JUDGE